# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTOPHER R. HALL,** :

        **Plaintiff** :   **CIVIL ACTION NO. 3:24-226**

    **v.** :     **(JUDGE MANNION)**

**MARK WAHL,** *et al.,* :

       **Defendants** :

## <u>MEMORANDUM</u>

Presently before the Court is Defendants' motion to dismiss the complaint filed by *pro se* Plaintiff Christopher R. Hall ("Hall") in which he asserts causes of action against them under 42 U.S.C. §1983 and the Religious Land Use and Institutional Persons Act, 42 U.S.C. §2000cc ("RLUIPA"), based on changes to the Commonwealth of Pennsylvania Department of Corrections ("DOC")'s policy relating to providing ceremonial meals accompanying certain religious holidays. For the reasons set forth below, the Court will grant the motion in part and deny it in part, as well as provide Hall with the opportunity to file an amended complaint.

## I.   BACKGROUND

*Pro se* Plaintiff Christopher R. Hall ("Hall") commenced this action by filing a complaint, an application for leave to proceed *in forma pauperis* ("IFP Application"), and a certified prisoner trust fund account statement, all of

which the Clerk of Court docketed on February 7, 2024. (Docs. 1–3.) In the complaint, Hall names as Defendants: (1) Mark Wahl ("Wahl"), Superintendent of Pennsylvania State Correctional Institution Waymart ("SCI Waymart"); (2) Timothy McDermott ("McDermott"), a grievance coordinator at SCI Waymart; (3) George M. Little ("Little"), the former Secretary of the DOC; and (4) Laurel R. Harry ("Harry"), the acting Secretary of the DOC. (Doc. 1 at 1–3.)

Unfortunately, and as discussed in more detail later in this Memorandum, the complaint contains a limited number of factual allegations and instead predominantly consists of legal conclusions. *See, e.g.*, (*id.* at 1, 4–11.) Nevertheless, Hall appears to include the following factual allegations: A rabbi informed Hall that the DOC and SCI Waymart were not going to accommodate the Islamic religious holidays of Eid al-Fitr and Eid al-Adha starting in February 2022. (*Id.* at 4.) In particular, the DOC and SCI Waymart were not going to provide inmates observing those holidays with ceremonial meals as they had in the past. (*Id.* at 5.) Instead, observing inmates could only choose a meal from the "common menu." (*Id.*)

This new policy was reflected in Little's memorandum dated February 24, 2022, which stated:

> The [DOC] currently offers Ceremonial [sic] meals pursuant to DC-ADM 819. For these meals, Food Services prepares a

- 2 -

separate meal apart from the mainline meal, and inmates are able to purchase optional menu items. With the ever-growing number of faith groups accommodated within the [DOC], a change in policy is needed to continue to strive for equity among those faith groups.

Beginning January 1, 2023, faith groups accommodated with Ceremonial Meals will instead be accommodated with up to two (2) Fellowship Meals a year. Fellowship Meals permit inmates of those faith groups to provide input on the mainline "best meal" to be served at two holy day observances per year; however, optional menu items will no longer be available. Additionally, members of each faith group will be able to eat together and afterwards engage in thirty (30) minutes of fellowship, provided communal gatherings are permitted at that time.

Faith groups previously accommodated with Ceremonial Meals will still be able to observe them in 2022 as they have done in the past. Beginning in 2023 and going forward, only Fellowship Meals will be accommodated.

(Doc. 1-2 at 2.)

On June 23, 2023, the United States District Court for the Western District of Pennsylvania resolved a Pennsylvania state inmate's motion for a preliminary injunction in *Williams v. Little*, No. 23-cv-37, 2023 WL 4144567 (W.D. Pa. June 23, 2023). (Doc. 1 at 5–7.)[1] In *Williams*, the Western District granted the inmate's motion for a preliminary injunction on his RLUIPA claim

---

[1] Hall appears to reference this case only because he believes it supports his legal claims in his complaint. The Court references it here because the Court has liberally construed the complaint to include an allegation from Hall that the decision led to Harry issuing a memorandum outlining a revised policy, and Hall attached this memorandum to the complaint. (*Id.* at 6–7.)

and directed Harry "in her official capacity, to take all necessary steps to reinstate the status quo as it existed for calendar year 2022 as to the observance of the Eid holidays at SCI-Albion and by Mr. Williams in particular." *Williams*, 2023 WL 4144567, at *17.

Approximately five (5) months after the *Williams* decision, Harry issued a memorandum titled "Adjustment to Religious Meals," which informed DOC inmates that "revisions [were] made to **Section 1 – General Procedures** of [DOC] Policy **DC-ADM 819, 'Religious Activities Procedures Manual,'** which outlines the [DOC's] accommodation of Religious Meals (formerly called Fellowship Meals)." (Doc. 1-2 at 3.) This memorandum stated that Religious Meals would be "selected from the master menu[] and . . . not be an extra meal in addition to those ordinarily served." (*Id.*) In addition, "to supplement a Religious Meal, qualifying general population (GP) inmates with sufficient funds may, through Food Services, place one group order for one identical inmate-purchased shelf-stable food item to supplement each Religious Meal." (*Id.* at 4.) The memorandum also outlined additional requirements relating to this supplemental food item. (*Id.* at 4–5.)

Based on these allegations, Hall asserts causes of action against Defendants in their individual and official capacities pursuant to RLUIPA and Section 1983 for violations of his rights under the First, Ninth, and Fourteenth

- 4 -

Amendments to the United States Constitution. (*Id.* at 2, 4, 10–11.) He seeks monetary damages, declaratory relief, and injunctive relief. (*Id.* at 11.)

On February 15, 2024, this Court issued an Order which, *inter alia*, granted the IFP Application and directed the Clerk of Court to send waiver of service forms to Defendants. (Doc. 6.) Defendants waived service and, on April 11, 2024, filed a motion to dismiss the complaint along with a supporting brief. (Docs. 13, 14.) Hall filed a brief in opposition to the motion to dismiss on May 6, 2024. (Doc. 15.) The motion to dismiss is ripe for disposition.

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

While the Court at this stage accepts the complaint's factual allegations as true, the Court does not do so to a plaintiff's legal conclusions. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine

whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

*Pro se* filings such as Hall's complaint must be construed "liberally." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). That means that the Court should "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." *Id.* It does not mean, however, that *pro se* litigants may "flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## B. The Court's Continued Screening Obligation of Complaints Under 28 U.S.C. §1915(e)(2)(B)

Because the Court previously granted Hall leave to proceed *in forma pauperis*, the Court has a continuing obligation to examine whether his complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. §1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case *at any time* if the court determines that-- . . . (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief" (emphasis added)). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). A complaint is malicious if, after "engag[ing] in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit," the Court determines that "the actions is an attempt to vex, injure or harass the defendant." *Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, No. 11-cv-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012). Finally, when considering whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim is identical to the legal standard described above when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule

12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)).

## C.    RLUIPA

"Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007); *see also Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (explaining that RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion"). To accomplish this protection, Section 3 of RLUIPA provides in pertinent part that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc–1(a). RLUIPA also has an "expansive[]" definition of "religious exercise," which includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Nunez v. Wolf*, 117 F.4th 137, 146 (3d Cir. 2024) (quoting 42 U.S.C. §2000cc-5(7)(A)).

In addition, "Congress mandated that [RLUIPA] 'shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by . . . the Constitution.'" *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting 42 U.S.C. §2000cc-3(c)). Overall,

> RLUIPA . . . affords inmates even "greater protection" than that provided by the First Amendment. *Holt*[, 574 U.S. at 357]. Under the latter, a prison regulation that substantially burdens religious exercise is subject to intermediate scrutiny and thus must be "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); under RLUIPA, however, that regulation is subject to strict scrutiny, requiring the government to prove that it "is the least restrictive means of furthering [a] compelling governmental interest," 42 U.S.C. § 2000cc-1(a)(2). . . . [T]hat burden is a heavy one and carries unique implications in the prison context for both the interests recognized as compelling and the acceptable means to accomplish them.

*Nunez*, 117 F.4th at 146 (first and second alterations added)

RLUIPA establishes a private right of action through which an aggrieved individual may "obtain appropriate relief against a government." *Id.* §2000cc-2(a). It defines the "government" to include: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law . . . ." *Id.* §2000cc-5(4)(A).

"To state a plausible claim under RLUIPA, a [prisoner-]plaintiff must allege that the prison placed a 'substantial burden' on the plaintiff's sincerely held religious belief." *Lapp v. Nye*, No. 1:23-cv-419, 2024 WL 53017, at *7 (M.D. Pa. Jan. 4, 2024) (citing *Washington*, 497 F.3d at 277–78). A plaintiff can demonstrate that a substantial burden exists if:

> 1) a follower is forced to choose between following the precepts of [their] religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of [their] religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify [their] behavior to violate [their] beliefs.

*Washington*, 497 F.3d at 280 (capitalization of "OR" in original) (footnote omitted). "If a prisoner-plaintiff establishes a substantial burden on a sincerely held religious belief, the burden shifts to the defendant to show that the policy or practice furthers a compelling government interest and is the least restrictive means of doing so." *Lapp*, 2024 WL 53017, at *7 (citing *Holt*, 574 U.S. at 361–62); *see also Holt*, 574 U.S. at 355 (explaining that RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest").

### D.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### E.    Section 1983 First Amendment Free Exercise Claims

The Free Exercise Clause of the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise"

of religion. U.S. Const. amend. I; *see United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 831 (1983) (explaining that First Amendment applies to states "by virtue of the Due Process Clause of the Fourteenth Amendment . . . ."). Concerning prisons, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison[,]" and, thus, they "clearly retain protections afforded by the First Amendment[.]" *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (citations and internal quotation marks and citations omitted). Nevertheless, prisoners' incarceration necessarily limits "many privileges and rights," which is "justified by the considerations underlying our penal system." *Id.* (citation and internal quotation marks omitted). These limitations "arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* (citations omitted).

"[The] evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination." *Id.* at 349 (citations and internal quotation marks omitted). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*,

482 U.S. 78, 89 (1987) (alteration omitted). This standard "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration . . . and[, additionally, it] avoids unnecessary intrusion of the judiciary into problems particularly ill[-]suited to resolution by decree." *O'Lone*, 482 U.S. at 349–50 (citations and internal quotation marks omitted).

Before analyzing the reasonableness of a prison regulation that infringes upon an incarcerated person's First Amendment rights, the Court should determine whether the plaintiff's religious beliefs are sincerely held and religious in nature. *See Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) ("A prerequisite to the [examination of the challenged regulation] is the assertion of only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." (citation and internal quotation marks omitted)). Stated differently, "[t]he Constitution does not protect mere assertion[s] of . . . religious beliefs." *Id.* (alterations in original) (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc).

If the Court determines that the plaintiff has a sincerely held religious belief, the Court will analyze the reasonableness of the challenged prison regulation by examining several factors, including: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate

governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89–91 (citations and internal quotation marks omitted). When considering these factors, although prison officials must show a rational connection between the regulation and a legitimate penological interest, the inmate-plaintiff bears the ultimate burden of demonstrating that the regulation is unconstitutional. *See Fontroy v. Beard*, 559 F.3d 173, 177 (3d Cir. 2009) ("Although the Inmates bear the ultimate burden of showing that the [prison regulation] is unconstitutional, it is the [state officials'] burden to demonstrate that a rational connection exists between the policy and a legitimate penological interest." (citing *Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008))). The inmate-plaintiff's burden is a "heavy" one due to their need to "overcome the presumption that the prison officials acted within their broad discretion." *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (citation and internal quotation marks omitted).

III.    **DISCUSSION**

A.    **The Court's Review of the Complaint Under Section 1915(e)(2)(B)**

1.    **Hall's RLUIPA Claims Against Defendants in Their Individual Capacities**

Hall appears to assert RLUIPA claims against Defendants in their individual capacities. *See* (Doc. 1 at 2–3 (indicating that Defendants are sued in their individual and official capacities)). The Court will dismiss these claims because "RLUIPA does not permit an action against [state officials] in their individual capacities." *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286, 303 (3d Cir. 2016) ("RLUIPA was enacted pursuant to Congress's powers under the Spending Clause, thereby allowing Congress to impose certain conditions, such as civil liability, on the recipients of federal funds, such as state prison institutions. Because state officials are not direct recipients of the federal funds, and thus would have no notice of the conditions imposed on them, they cannot be held individually liable under RLUIPA." (footnotes omitted).

2.    **Hall's RLUIPA Claims for Monetary Damages Against Defendants in Their Official Capacities**

In his requests for relief in the complaint, Hall does not associate the requests as being related to certain causes of action in his complaint. As such, the Court construes the complaint as asserting RLUIPA claims for

monetary damages against Defendants in their official capacities. The Court will dismiss these claims because "RLUIPA claims for damages against state officials in their official capacities are barred by the Eleventh Amendment." *Spada v. Klemm*, No. 1:22-cv-478, 2023 WL 2290258, at *6 (M.D. Pa. Feb. 28, 2023) (citing *Sossamon v. Texas*, 563 U.S. 277, 293 (2011)).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)). Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an

agency of the Commonwealth of Pennsylvania, is entitled to the Commonwealth's Eleventh Amendment immunity. *See* 71 P.S. §61(a) ("The executive and administrative work of this Commonwealth shall be performed by the . . . Department of Corrections . . . ."); *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

In this case, Defendants are all current or former DOC employees. A suit for monetary damages brought against a state official in their official capacity "is not a suit against that official but rather is a suit against that official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S 658, 690 n.55 (1978))). Thus, Hall's official capacity claims against Defendants for monetary damages are

actually claims against the Commonwealth, which is immune from such claims under the Eleventh Amendment. *See Will*, 491 U.S. at 66, 70–71.

There are, however, three narrow exceptions to Eleventh Amendment immunity potentially applicable to Hall's claims for monetary damages. The first two exceptions are (1) if the state waives its immunity or (2) Congress exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Graham*, 473 U.S. at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Neither of these exceptions apply here because the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. §8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived its Eleventh Amendment immunity). In addition, Congress did not abrogate the States' Eleventh Amendment immunity by enacting RLUIPA. *See Sossamon*, 563 U.S. at 285–88.

As for the third exception, the Eleventh Amendment does not bar a "suit[] against state officers for prospective relief to end an ongoing violation

of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). Therefore, to the extent that Hall seeks prospective injunctive or declaratory relief under RLUIPA, the Eleventh Amendment does not bar those claims.

In conclusion, the Court will dismiss Hall's RLUIPA claims against Defendants for monetary damages in their official and individual capacities. To the extent his RLUIPA claims proceed in this case, Hall will be limited to official capacity claims for declaratory and injunctive relief. *See, e.g.*, *Barros v. Wetzel*, No. 1:14-cv-1746, 2015 WL 5785746, at *4 (M.D. Pa. Sept. 9, 2015) ("A RLUIPA cause of action is an official-capacity claim for declaratory and injunctive relief against the defendant, as the DOC official responsible for promulgating the statewide departmental policy on inmate observance of Ramadan.").

### 3. Hall's RLUIPA Claims for Injunctive and Declaratory Relief Against Little

Hall implicitly acknowledges in his complaint that Little is no longer the Secretary of the DOC when he alleges that Harry is now the acting Secretary of the DOC. *See, e.g.*, (Doc. 1 at 3, 6–7). Because Little is no longer the DOC Secretary, Hall cannot obtain declaratory or injunctive relief against him. *See Tatel v. Mt. Lebanon Sch. Dist.*, No. 22-cv-837, 2024 WL 4362459, at *50 (W.D. Pa. Sept. 30, 2024) ("There is no need to issue declaratory relief

against [former school district superintendent and former assistant superintendent] because both of them are retired."); *Cook v. Corbett*, No. 14-cv-5895, 2015 WL 4111692, at \*12 (E.D. Pa. July 8, 2015) (concluding claim seeking injunctive relief against former governor was moot because he left office); *Bey v. Pa. Dep't of Corr.*, 98 F. Supp. 2d 650, 658 (E.D. Pa. 2000) (determining that plaintiff's official-capacity claim for injunctive relief against former prison Superintendent was moot); *see also Andela v. Admin. Off. of U.S. Cts.*, 569 F. App'x 80, 83 (3d Cir. 2014) (unpublished) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Therefore, as Hall is unable to obtain any relief against Little on his RLUIPA claim, the Court will dismiss this claim against Little.

### 4. Hall's Ninth Amendment Claims

Hall makes a passing reference to the Ninth Amendment in his complaint. (Doc. 1 at 10.) The Ninth Amendment states that "[t]he enumeration of the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend IX. Although it is unclear how Hall seeks to apply the Ninth Amendment to his claims, "[t]he Ninth Amendment does not independently establish any constitutional right for the purpose of pursuing a civil rights action." *Moffitt v.*

*Tunkhannock Area Sch. Dist.*, No. 3:13-cv-1519, 2013 WL 6909958, at *3 (M.D. Pa. Dec. 13, 2013) (citations omitted); *see also Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) (unpublished) ("[W]e are not aware of any support for Perry's claim that the Ninth Amendment protects against any of the events described in his complaint. Indeed, the Ninth Amendment does not independently provide a source of individual constitutional rights." (citations omitted)). As such, "courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions." *Mayo v. Corr. Emergency Response Team*, No. 18-cv-4390, 2018 WL 6524247, at *4 (E.D. Pa. Dec. 12, 2018) (citations omitted). Accordingly, the Court will dismiss Hall's Ninth Amendment claims asserted in the complaint.

### B.   Defendants' Motion to Dismiss

Defendants raise several arguments in support of their motion to dismiss. First, they argue that the Court should dismiss the complaint because it does not comply with Federal Rule of Civil Procedure 8. (Doc. 14 at 3–4.) Second, they contend that the Court should dismiss Hall's Section 1983 claims against them in their official capacities because the Eleventh

Amendment bars those claims. (*Id.* at 5–6.)[2] Third, they assert that Hall's claims should be dismissed because he has failed to adequately allege their personal involvement in any violations. (*Id.* at 6–8.) Fourth, they argue that Hall has failed to state viable RLUIPA or Section 1983 First Amendment claims because no substantial burden was placed on his ability to practice his religion. (*Id.* at 8–12.) Fifth, they contend that Hall has failed to state a plausible Section 1983 claim for a violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 12–14.) Sixth, and finally, they assert that they are entitled to qualified immunity. (*Id.* at 14–15.) The Court addresses each argument in turn.

### 1.    The Complaint's Compliance with Rule 8

As stated above, Rule 8 requires a plaintiff to include in a complaint "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissals of complaints pursuant to Rule 8 are proper where the complaint (1) consists of only "labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); (2) is "illegible and

---

[2] Defendants do not mention RLUIPA in the section of their supporting brief where they argue that the Court should dismiss the claims against them in their official capacities. As such, the Court has construed it as applying to only Hall's Section 1983 claims.

- 23 -

incomprehensible," *Stephanatos v. Cohen*, 236 F. App'x 785, 787 (3d Cir. 2007) (unpublished); (3) "is not only of an unwieldly length, but . . . is also largely unintelligible," *id.*; (4) leaves "the defendants having to guess what of the many things discussed constituted [the plaintiff's proposed cause(s) of action," *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (unpublished); (5) is "rambling and unclear," *Tillio v. Spiess*, 441 F. App'x 109, 110 (3d Cir. 2011) (unpublished); or (6) "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," *id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Here, Defendants argue that the complaint fails to comply with Rule 8 because it mostly consists of recitations of case law and the elements of Hall's purported causes of action. (Doc. 14 at 4.) It also "contains zero factual averments" outside of "one paragraph indicating [Hall] was informed by the SCI-Waymart Rabbi of a change in the way religious meals would be accommodated and another paragraph quoting a 2022 and 2023 memo noting the exact changes made." (*Id.*) It further "simply asserts [Hall's] entitlement to relief." (*Id.*)

Hall does not address Defendants' Rule 8 arguments in his opposition brief. *See generally* (Doc. 15 at 1–6). Nevertheless, the Court will not dismiss

the complaint because of its alleged noncompliance with Rule 8. While Defendants correctly point out that the complaint consists mostly of legal conclusions and includes few factual allegations (which will be discussed later in this Memorandum), it is not overly lengthy, confusing, illegible, or unintelligible. Moreover, contrary to Defendants' contention, the complaint does not leave them guessing as to what Hall's claims are in this case. Therefore, even though Hall may not have supported his claims with sufficient factual allegations (as discussed later in this Memorandum), the Court will deny this portion of Defendants' motion to dismiss.

### 2. Plaintiff's Section 1983 Official Capacity Claims

Defendants assert that the Eleventh Amendment bars Hall's Section 1983 official capacity claims against them. (Doc. 14 at 5–6.) While Defendants are correct as to Hall's Section 1983 official capacity claims for money damages, they are mistaken as to his official capacity claims for prospective declaratory and injunctive relief. Regarding his official capacity claims for money damages, the Eleventh Amendment generally bars those claims for the same reasons it bars Hall's RLUIPA official capacity claims for money damages. *See supra* at 13–17. The Court also notes that Congress did not intend to abrogate a state's Eleventh Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979)

(stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Therefore, the Court will dismiss Hall's Section 1983 claims for monetary damages against Defendants in their official capacities.

As for Hall's Section 1983 claims against Defendants in their official capacities for prospective injunctive or declaratory relief, the Eleventh Amendment does not bar those requests for relief against Wahl, McDermott, and Harry. *See Graham*, 473 U.S. at 167 (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"). However, since Little is no longer the Secretary of the DOC, Hall may not obtain such relief against Little. Accordingly, the Court will dismiss Hall's Section 1983 claim for monetary damages against Defendants, and dismiss Hall's Section 1983 official capacity claims against Little in their entirety.

### 3. Defendants' Personal Involvement

Defendants argue that the Court should dismiss Hall's claims against them because he fails to specifically allege that they participated in any action to violate his constitutional rights. (Doc. 14 at 7.) They contend that

Hall's allegations against Wahl, Little, and Harry "appear to concern their supervisory roles as the Superintendent of SCI-Waymart and the Secretary of the [DOC]." (*Id.*) As for McDermott, they assert that Hall appears to have named him as a Defendant simply because he responded to a grievance, which is an insufficient basis upon which to find personal involvement. (*Id.* at 7–8.). It does not appear that Hall specifically responds to these arguments in his opposition brief. (Doc. 15 at 1–6.)

In general, a plaintiff must allege how each defendant was personally involved in the events and occurrences giving rise to their Section 1983 claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Dooley v. Wetz*el, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). These legal principles are equally applicable to a plaintiff's RLUIPA's claims. *See Lapp*, 2024 WL 53017, at *7

("[T]he same personal involvement analysis applied to Lapp's [Section 1983] claim can be applied to her RLUIPA claim.").

Here, Hall has failed to plead any personal involvement by Wahl or McDermott in any alleged constitutional or RLUIPA violation. His complaint consists of a description of their jobs at SCI Waymart and nothing else. *See* (Doc. 1 at 2–3.) Hall cannot attempt to hold Wahl liable simply because he is the Superintendent of SCI Waymart without any factual allegations about what Wahl allegedly did to violate his constitutional rights or RLUIPA. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (explaining that a supervisor "can be liable [under Section 1983] if they established and maintained a policy, practice or custom which directly caused the constitutional harm" or "if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations"). In addition, to the extent that Hall is complaining about McDermott rejecting a grievance he filed, such an allegation is insufficient to show personal involvement, at least for purposes of his Section 1983 claim against McDermott. *See Cicchiello v. Dauphin Cnty. Prison Bd.*, No. 3:24-cv-509, 2025 WL 260308, at *3 (M.D. Pa. Jan. 21, 2025) ("[I]nvolvement in the post-incident grievance

process alone does not give rise to Section 1983 liability." (citations omitted)).

Regarding Hall's remaining claims against Little and Harry, he has sufficiently alleged their personal involvement. More specifically, Hall's allegations can be liberally construed to state that Little adopted the first policy which affected religious meals and Harry then adopted the second policy, both of which caused him harm. *See* (Doc. 1 at 5–7). Accordingly, the Court will grant the motion to dismiss to the extent Defendants request that the Court dismiss Hall's Section 1983 claims against Wahl and McDermott for lack of personal involvement, dismiss Hall's Section 1983 claims against Wahl and McDermott, and deny the part of Defendants' motion seeking to have the Court dismiss Hall's claims against Harry and Little for their alleged lack of personal involvement.

### 4. Sufficiency of Hall's Allegations Supporting his Section 1983 and RLUIPA Claims

Defendants contend that the Court should dismiss Hall's Section 1983 First Amendment free exercise and RLUIPA claims because he has failed to sufficiently allege that the challenged policies substantially burdened his religious practice. (Doc. 14 at 8–12.) They argue that it is unclear from the complaint whether Hall is claiming that the elimination of optional menu items

or the denial of Eid Al-Fitr and Eid Al-Adha meals altogether, has placed a substantial burden on his religious practices. (*Id.* at 12.) They assert that Hall

> is not being denied the opportunity to participate in his religious holidays, he simply is not being afforded the opportunity to eat a meal which includes optional menu items and other customary foods he was permitted to purchase from outside vendors in the past. His religion is not substantially burdened by cutting out the optional food items, and he has not presented any legal support for such a requirement.

*Id.* The Court agrees with Defendants that Hall has failed to plausibly allege that Defendants' actions substantially burdened his religious practices.

"The threshold question in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion." *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (unpublished) (citing *Washington*, 497 F.3d at 277–78). Here, while the Court can ascertain the policies Hall complains of, due to the scarcity of factual allegations in his complaint, he has failed to sufficiently identify how those policies substantially burdened the practice of his religion. Instead, he focuses on what the policies were and what occurred in the *Williams* case. As such, the Court will dismiss the remainder of his First Amendment and RLUIPA claims for the failure to state a claim.

### 5.   Hall's Fourteenth Amendment Claim

Defendants contend that Hall has failed to state a plausible Fourteenth Amendment equal protection claim against them. (Doc. 14 at 12–14.) The Court agrees.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). To plausibly plead an equal protection claim, a plaintiff must allege facts showing that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See Vurimindi v. City of Phila.*, 521 F. App'x 62, 65 (3d Cir. 2013) (unpublished) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)). To be "similarly situated," parties must be "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008). Moreover, to demonstrate an equal protection violation, an inmate has the

burden of proving, under the second prong, the existence of purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 111 (1991); *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Official action does not violate the Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 239 (1977); *Stehney v. Perry*, 101 F.3d 925, 938 (3d Cir. 1996). The plaintiff carries the burden of showing intentional or purposeful discrimination. *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013).

In this case, Hall does not allege any facts necessary to support an equal protection violation. He does not identify any groups who were similarly situated and treated differently, and at best, he includes only conclusory allegations that any selective treatment was motivated by an intention to discriminate because of impermissible considerations such as his religion. Accordingly, the Court will dismiss Hall's equal protection claims asserted in his complaint.

### C.    Leave to Amend

Having determined that Hall's claims against Defendants are subject to dismissal, the Court must consider whether to grant him leave to file an

amended complaint. When granting a motion to dismiss under Rule 12(b)(6) courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment— irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."); "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

In this case, the Court finds that it would be futile for Hall to amend his: (1) RLUIPA claims against Defendants in their individual capacities; (2) his RLUIPA and Section 1983 official capacity claims for injunctive and declaratory relief against Little; and (3) his Ninth Amendment claims against Defendants. Thus, the Court will dismiss those claims with prejudice. The

- 33 -

Court also finds that it would be futile for Hall to amend his RLUIPA and Section 1983 claims for monetary relief against Defendants in their official capacities; however, the Court must dismiss them without prejudice even though Hall may not reassert them in an amended complaint. *See, e.g.*, *Yerger v. Northumberland Cnty. Assistance Off.*, No. 24-2513, 2024 WL 5040397, at *2 (3d Cir. Dec. 9, 2024) (concluding that district court should have dismissed complaint on Eleventh Amendment grounds without prejudice, "because Eleventh Amendment immunity is a 'threshold, nonmerits issue that does not entail any assumption by the court of substantive law-declaring power'" (quoting *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023))). Finally, the Court will dismiss the following claims without prejudice: (1) his RLUIPA and Section 1983 official capacity claims for injunctive and declaratory relief against Wahl, McDermott, and Harry; (2) his Section 1983 First Amendment free exercise claims against Defendants in their individual capacities; and (3) his Section 1983 equal protection claims. The Court will provide Hall with the opportunity to file an amended complaint to the extent he can sufficiently allege each Defendant's personal involvement in any alleged constitutional or RLUIPA violation, particularly state how his religious practices were substantially burdened by their

conduct and the policies he identifies in his complaint, and allege facts that could support a cognizable equal protection claim.

Additionally, while the Court recognizes that Defendants argue in their motion to dismiss that they are entitled to qualified immunity (Doc. 14 at 14–15), because Hall will have the opportunity to file an amended complaint, the Court will refrain from addressing Defendants' argument at this time. Defendants may re-raise this argument should Hall file an amended complaint.

## IV.    CONCLUSION

Based on the aforesaid, Defendants' motion to dismiss Hall's complaint will be granted in part and denied in part, and the Court will give Hall an opportunity to file an amended complaint as to only the specific claims identified above. An appropriate Order follows.[3]

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 6, 2025**
24-226-01

---

[3] This Order will provide Hall with more specific instructions on the filing of an amended complaint.